IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

IN RE:                                        )
                                              )
TYLER RYAN JAMES and           )  Case No.  05-60158
STACEY ANNETTE JAMES,     )
                                              )
          Debtors.                      )

## MEMORANDUM OPINION

The Chapter 7 trustee objected to debtors claims of exemption. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I will overrule the trustee's objection.

## FACTUAL BACKGROUND

On January 21, 2005 debtors Stacey and Tyler James filed a Chapter 7 bankruptcy petition. On their amended Schedule B debtors listed the sum of $2,705.62 as "[p]repetition earnings paid postpetition." On their amended Schedule C debtors claimed the sum of $270.56 as exempt pursuant to section 513.440 of Missouri's Revised Statutes and claimed the sum of $2,435.06 as exempt pursuant to section 525.030.2 of Missouri's Revised Statutes. The trustee objected to both of these claims. On September 28, 2005, this Court held a hearing. At the hearing debtors' counsel asked for time to submit Mr. James' employment contract, and the parties consented to a ruling on the pleadings. The employment contract has now been submitted.

## DISCUSSION

Mr. James has been an agent for Northwestern Mutual since March 6, 2003. The employment agreement Mr. James entered into conditions the vesting of any renewals upon two continuous years of employment. At the time of the bankruptcy filing, Mr. James had no rights in the renewals. Section 541 of the Bankruptcy Code states that the bankruptcy estate is comprised of property in which debtor has a legal or equitable interest as of the commencement of the case. On January 21, 2005, the petition date, Mr. James had not yet reached his two-year anniversary with Northwestern Mutual, therefore, he has no legal or equitable interest in any renewals that accrue postpetition. Nonetheless, any nonexempt commissions or renewals to which Mr. James was entitled on the petition date are property of the estate. According to the commission statement, Mr. James received the sum of $2,705.62, representing commissions that had accrued prepetition, but were disbursed to him postpetition. That is the sum at issue here. Using two separate exemption provisions, Mr. James amended his schedules and claimed the entire sum as exempt. I will deal first with the "head of household" provisions. Mr. James claims that $270.56 is exempt pursuant to section 513.440 of Missouri's Revised Statutes. That section provides that

> [e]ach head of a family may select and hold, exempt from execution, any other property real, personal or mixed, or debts and wages, not exceeding in value the amount of one thousand two hundred fifty dollars plus three hundred fifty dollars for each of such person's unmarried dependent children under the age of eighteen years . . . ."[1]

---

[1] Mo. Stat. Ann. § 513.440 (Supp. 2005).

The debtors' have a two-year-old son, thus, they are entitled to claim the sum of $1600 under this statute. Prior to the amendment, debtors claimed the sum of $997.56, pursuant to the "head of household" allowance. And debtors have the right to amend their schedules at any time before the case is closed.[2] They are, therefore, entitled to amend their schedules and claim an additional $270.56 as exempt under this provision.

The trustee also objects to the claim of exemption pursuant to section 525.030.2 of Missouri's Revised Statutes, which provides as follows:

> 2. The maximum part of the aggregate earnings of any individual for any workweek, after the deductions from those earnings of any amounts required by law to be withheld, which is subjected to garnishment may not exceed. . .(c) if the employee is the head of a family and a resident of this state, ten percentum. . . . The term **"earnings"** as used herein means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program.[3]

Mr. James claims that the prepetition renewals, in the amount of $2,705.62, are his earnings, as that term is defined by statute, therefore, he is entitled to claim 90% of the renewals as exempt under this provision. The employment agreement provides that Mr. James is an independent contractor, and not an employee of Northwestern Mutual.[4] The contract also sets forth Mr. James' general duties and responsibilities:

---

[2]"A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed. . ." Fed. R. Bankr. P. 1009(a); *In re Ladd*, 319 B.R. 599, 603, (B.A.P. 8th Cir. 2005).

[3]Mo. Stat. Ann. § 525.030.2 (2002).

[4]Debtor's Ex. # 4, ¶ 4.

3

**8. General Duties–** Agent shall solicit Applications within the territory, and shall procure the issuance of insurance policies and annuity contracts in an aggregate amount and on a number of lives satisfactory to First Party and at least equal to the minimum requirements established by the Company for licensure. He shall collect the initial premiums on such policies and contracts. He shall not engage in any business other than that covered by this agreement except with the consent of First Party.

**9. Responsibility–** Agent shall be responsible to First Party and the Company for all business done by or entrusted to his agents or persons employed by him. He shall indemnify and save First Party, District Agent, General Agent and the Company harmless from any and all expenses, costs, causes of action and damages resulting from or growing out of acts or transactions by himself or his employees or agents.[5]

Debtors argue that these two paragraphs demonstrate that Mr. James' earnings derive from his personal services.

In *In re Duncan*,[6] the court, interpreting a statute similar to section 525.030.2 of Missouri's Revised Statutes, held that the wage exemption is available to independent contractors to the extent that the compensation was for personal services.[7] In *In re Marshburn*,[8] the court held that renewal payments due a debtor post termination were earnings for services, which are exempt under Colorado law.[9] Again the Colorado wage exemption statute is similar to Missouri's. In both of these cases the debtors were insurance

---

[5]*Id.* at ¶¶ 8 and 9.

[6]140 B.R. 210 (Bankr. E.D. Tenn. 1992).

[7]*Id.* at 213.

[8]5 B.R. 711 (Bankr. D. Colo. 1980).

[9]*Id.* at 715.

agents, and their renewals represented their net earnings for the personal services they provided. In *In re Parsons*,[10] however, the debtor tried to exempt the commissions due her real estate agency for sales contracts that had been signed prepetition, even though the sales did not close until postpetition. Debtor had several employees, and she testified that her employees performed some of the services required to both acquire the sales contract and close the sale. The Court, therefore, found that the debtor was not entitled to claim all of the commissions as exempt; she was instead entitled to claim as exempt a portion of the amount she scheduled as her wages.[11]

In this case, Mr. James testified at a previous hearing that he is a solo agent. He has no employees. His expenses are deducted from his renewals, thus, the amount paid to him by Northwestern, and claimed as exempt, represents his net earnings. I find that those earnings derived from Mr. James' personal services, and are, therefore, exempt to the extent allowed by section 525.030.2 of Missouri's Revised statutes. Therefore, the trustee's objection must be overruled.

An Order in accordance with this Memorandum Opinion will be entered this date.

/s/ Arthur B. Federman
Bankruptcy Judge

Date: October 26, 2005

---

[10] 262 B.R.475 (B.A.P. 8th Cir. 2001) *affirmed* 280 F.3d 1185 (8th Cir 2002)

[11] *Id.* at 481.